IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELLEN TREFFLY COYNE, | |
| Plaintiff, | No. 8 C 1619 |
| v. | JUDGE NORGLE |
| CSO ANGEL BRINICKI, OFFICER JAMES CIUKAJ, OFFICER FORREST WONDOLOWSKI and the VILLAGE OF CRESTWOOD, | MAGISTRATE JUDGE DENLOW |
| Defendants. | |

## <u>FIRST AMENDED COMPLAINT AT LAW</u>

NOW COMES the PLAINTIFF, by and through the LAW OFFICES OF BLAKE HORWITZ, LTD., and pursuant to this First Amended Complaint at Law, states the following against the above named Defendants, to wit CSO ANGEL BRINICKI, OFFICER JAMES CIUKAJ, OFFICER FORREST WONDOLOWSKI, (hereinafter, the "DEFENDANT OFFICERS") and the VILLAGE OF CRESTWOOD.

### <u>JURISDICTION</u>

1. The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983; the Judicial Code, 28 U.S.C. §1331 and §1343(a); the Constitution of the United States; and this Court's supplementary jurisdiction powers.

### <u>PARTIES</u>

2. PLAINTIFF is a resident of the State of Illinois and of the United States.

3. The DEFENDANT OFFICERS were at all times relevant hereto employed by, agents of and acting on behalf of the VILLAGE OF CRESTWOOD.

4.  The VILLAGE OF CRESTWOOD is a duly incorporated municipal corporation and is the employer and principal of the DEFENDANT OFFICERS as well as the other officers and/or employees referred to in this Complaint.

5.  At all times material to this complaint, the DEFENDANT OFFICERS were acting under color of state law, ordinance and/or regulation, statutes, custom and usages of the VILLAGE OF CRESTWOOD.

**SPECIFIC UNDERLYING FACTS REGARDING THE ARREST**

6.  On or about December 8, 2007, the PLAINTIFF, her three children and their minor companion, travelled to the Wal-Mart in Crestwood, Illinois.

7.  Upon arrival at the Wal-Mart, PLAINTFF, her two daughters and their companion, exited PLAINTIFF'S car.

8.  Being the Christmas season, they left the car in order to donate money to the Salvation Army worker who maintained a Salvation Army bucket outside of one of the front doors of Wal-Mart.

9.  Upon exiting the car, PLAINTIFF left, within the car, her minor daughter PHOEBE JANECYK.

10. PHOEBE was two years old at the time.

11. When PHOEBE was left in the vehicle (a Volvo station wagon), the inside of the car was warm, the car doors were locked and the car alarm was activated.

12. While PHOEBE was left in the vehicle, it would have been impossible for an individual to enter the car without sounding the alarm.

13. The child restraint seat upon which PHOEBE was resting was properly secured in PLAINTIFF'S car, following all rules and regulations of the State of Illinois and VILLAGE OF CRESTWOOD.

14. While PHOEBE was left in the warm car, secure and asleep, the PLAINTIFF and the three other minor children were donating money into the Salvation Army bucket.

15. While PHOEBE the PLAINTIFF and the three other minor children were donating money into the Salvation Army bucket, it was snowing and raining outside.

16. PLAINTIFF left PHOEBE in the warm car, asleep for approximately four minutes. During the entire time period that PLAINTIFF left PHOEBE in the car, PLAINTIFF had kept the car eye sight, being only 2-3 car lengths from the car at all times.

17. At no time did PLAINTIFF enter the Wal-Mart store and purchase an item while PHOEBE was in the car.

18. At no time was PHOEBE out of PLAINTIFF'S sight

19. The PLAINTIFF was always able to see her vehicle.

20. If anyone opened a door to the vehicle, not only would PLAINTIFF have been able to see a door open, but the loud car alarm would have sounded.

21. Notwithstanding the obviously careful safety precautions undertaken by PLAINTIFF, during the few short minutes that she was away from her car, donating money with the other minor children, PLAINTIFF was stopped by and detained by one of the DEFENDANT OFFICERS.

22. Said officer knew (saw) that PLAINTIFF and the other minor children were donating money into the Salvation Army Bucket.

23. Said officer knew, *inter alia,* that PLAINTIFF was in full site of the car where PHOEBE was asleep, that PLAINTIFF was only 2-3 car lengths away from the car and that it was snowing and raining outside.

24. Notwithstanding the above, said officer, along with the other DEFENDANT OFFICERS, caused PLAINTIFF to be arrested for, *inter alia*, the willful endangerment of the life her child, PHOEBE.

25. At no time did Plaintiff endanger the life of her child, within the meaning of the criminal statue charging same: 720 ILCS 5/12-21.6.

26. At no time was there probable cause to believe that PLAINTIFF endangered PHOEBE within the meaning of 720 ILCS 5/12-21.6.

27. 720 ILCS 5/12-21.6 stated, at the time of PLAINTIFF'S arrest, the following:

> It is unlawful for any person to willfully cause or permit the
> life or health of a child under the age of 18 to be endangered
> or to willfully cause or permit a child to be placed in
> circumstances that endanger the child's life or health * * * .

28. At no time did PLAINTIFF willfully cause PHOEBE'S life to be in danger.

29. At no time did PLAINTIFF willfully permit PHOEBE to be in danger.

30. At no time was there probable cause to believe that PLAINTIFF willfully caused and/or permitted PHOEBE to be in danger.

31. At no time did PLAINTIFF violate any other rule, regulation, ordinance and/or law of the STATE OF ILLINOIS and/or VILLAGE OF CRESTWOOD.

32. At no time was there probable cause to believe that PLAINTIFF violated any a rule, regulation, ordinance and/or law of the STATE OF ILLINOIS and/or VILLAGE OF CRESTWOOD.

33. On or about December 8, 2007, PLAINTIFF did not resist arrest.

34. On or about December 8, 2007, PLAINTIFF did not batter and/or assault any of the DEFENDANT OFFICERS.

35. On or about December 8, 2007, PLAINTIFF did not obstruct any of the DEFENDANT OFFICERS.

**ACTIONS OF ASSISTANT COOK COUNTY STATE'S ATTORNEY**

36. The actions of the DEFENDANT OFFICERS proximately caused the PLAINTIFF to be charged with reckless endangerment of the life of PHOEBE.

37. After the charges were developed by the DEFENDANT OFFICERS, the charges were reviewed by a Cook County Assistant State's Attorney.

38. After the charges (made manifest in police reports and charging instruments) were reviewed by a Cook County Assistant State's Attorney, said charges were dropped.

39. The charges were dropped 90 days after they were initiated by the DEFENDANT OFFICERS.

40. When the Cook County Assistant State's Attorney dropped the criminal charges against the PLAINTIFF, said attorney determined that there was insufficient evidence to prosecute a criminal claim against the PLAINTIFF.

41. When the Cook County Assistant State's Attorney dropped the criminal charges lodged against the PLAINTIFF, said attorney determined that there was not sufficient evidence to prosecute the PLAINTIFF for reckless endangerment of PHOEBE JANECYK.

42. Prior to the dropping of the criminal charges against PLAINTIFF, the DEFENDANT OFFICERS spoke to attorneys at the Cook County State's Attorneys' office, with regard to their belief as to the basis for lodging a criminal action against the PLAINTIFF.

43. After speaking to the DEFENDANT OFFICERS, the criminal case was dismissed.

## GENERAL ALLEGATIONS

44. As a result of the criminal charges lodged against the PLAINTIFF, PLAINTIFF was caused to secure the services of a criminal defense attorney.

45. As a result of the criminal charges lodged against the PLAINTIFF, PLAINTIFF was caused to pay money to the criminal defense attorney to defend her in the false allegations lodged and/or initiated by the DEFENDANT OFFICERS.

46. As a result of the criminal charges lodged against the PLAINTIFF, PLAINTIFF was criminally prosecuted for over 90 days.

47. The cause of action lodged against the PLAINTIFF was dismissed due to the fact that there was no probable cause for the arrest in the first place and there were insufficient facts to support a criminal action against the PLAINTIFF.

## GENERAL ALLEGATIONS

48. On or about December 8, 2007, some or all of the DEFENDANT OFFICERS were engaged in an unreasonable seizure of the PLAINTIFF.  This conduct violated the Fourth Amendment to the United States Constitution.

49. The DEFENDANT OFFICERS charged and/or participated in the charging of PLAINTIFF with criminal activity, and arrested, participated in the arrest and/or failed to prevent the arrest of the PLAINTIFF notwithstanding the fact that the DEFENDANT OFFICERS failed to observe and/or learn that PLAINTIFF had committed criminal activity of any sort.  The DEFENDANT OFFICERS did not have probable cause to believe that criminal activity took place relative to the PLAINTIFF.

50. As a direct and proximate result of one or more of the aforesaid acts or omissions of the DEFENDANT OFFICERS, PLAINTIFF was caused to suffer damages.

51. On or about December 8, 2007, the DEFENDANT OFFICERS were on duty at all times relevant to this complaint and were duly appointed police officers for the VILLAGE OF CRESTWOOD.  The DEFENDANT OFFICERS engaged in the conduct complained of, on said date, in the course and scope of employment and while on duty.  This action is being brought with regard to the individual capacity of the DEFENDANT OFFICERS.

52. Upon information and belief, CSO ANGEL BRINICKI, on December 8, 2007, came into physical contact with PLAINTIFF.

53. Upon information and belief, OFFICER JAMES CIUKAJ, on December 8, 2007, came into physical contact with PLAINTIFF.

54. Upon information and belief, OFFICER FORREST WONDOLOWSKI, on December 8, 2007, came into physical contact with PLAINTIFF.

## EQUAL PROTECTION CLASS OF ONE

55. The actions of the DEFENDANT OFFICERS, in engaging in the above referenced activity, which led to the generation of false documentation and criminal charges to be lodged against PLAINTIFF, demonstrate that the DEFENDANT OFFICERS failed in their duty to enforce the laws equally and fairly towards the PLAINTIFF, therefore violating the Equal Protection Clause of the United States Constitution.

56. In connection with the Equal Protection Claim, PLAINTIFF was a "Class of One."  In that regard, PLAINTIFF was treated with ill will.  PLAINTIFF was also treated disparately without a rational basis.

57. PLAINTIFF was intentionally treated differently as a result of having a potential claim against the DEFENDANT OFFICERS and/or witnessing police misconduct attributable to the DEFENDANT OFFICERS.

58. The DEFENDANT OFFICERS acted with discriminatory intent by treating PLAINTIFF differently and trying to cause further injury to PLAINTIFF and by generating false evidence against PLAINTIFF.

59. PLAINTIFF was similarly situated to other individuals involved in incidents with police officers that were not the victims of police misconduct and/or potential claimants against Police Officers.

60. The DEFENDANT OFFICERS, each of them, have participated in the arrest of over 20 individuals prior to the arrest of the PLAINTIFF.

61. On at least 20 occasions prior to December 8, 2007 the DEFENDANT OFFICERS, each of them, have not falsified police reports.

62. On at least 20 occasions prior to December 8, 2007 the DEFENDANT OFFICERS, each of them, have not partaken in, or contributed to, the falsification of police reports.

63. The DEFENDANT OFFICERS, each of them, have been trained, prior to December 8, 2007, that upon the signing of a criminal complaint, there is a strong likelihood that a criminal action will commence against the party against whom the allegations are submitted in the criminal complaint.

64. CSO ANGEL BRINICKI, on at least 20 occasions prior to and/or after December 8, 2007, has participated in the arrest of individuals and has not falsified information contained within a police report with regard to the arrest.

65. On December 8, 2007 there was no reasonable reason for CSO ANGEL BRINICKI to contribute to the falsification of a police report and/or criminal complaint with respect to PLAINTIFF.

66. OFFICER JAMES CIUKAJ, on at least 20 occasions prior to and/or after December 8, 2007, has arrested individuals and has not falsified information contained within a police report with regard to the arrest.

67. OFFICER JAMES CIUKAJ, on at least 20 occasions prior to and/or after December 8, 2007, has signed criminal complaints and has not falsified information contained within said charging instruments.

68. On December 8, 2007 there was no reasonable reason for OFFICER JAMES CIUKAJ to contribute to the falsification of a police report and/or criminal complaint with respect to PLAINTIFF.

69. OFFICER FORREST WONDOLOWSKI, on at least 20 occasions prior to and/or after December 8, 2007, has arrested individuals and has not falsified information contained within a police report with regard to the arrest.

70. OFFICER FORREST WONDOLOWSKI, on at least 20 occasions prior to and/or after December 8, 2007, has signed criminal complaints and has not falsified information contained within said charging instruments.

71. A code of silence exists between officers of the Defendant Municipality. This code of silence obstructs the legal process (preventing the free flow of honest information with regard to acts of misconduct). This code of silence contributes to the generation of secrets, in the department, regarding police officer misconduct.

## COUNT I
## §1983 False Arrest

72. PLAINTIFF re-alleges paragraphs 1 – 71 as though fully set forth herein.

73. The actions of the DEFENDANT OFFICERS, by participating in the arrest, generation of documents and/or failure to intervene in the arrest (with the ability to do so) caused the arrest of the PLAINTIFF without probable cause to believe that PLAINTIFF committed criminal activity.  Therefore, the conduct of the DEFENDANT OFFICERS was in violation of the Fourth Amendment to the United States Constitution.

74. The aforementioned actions of the DEFENDANT OFFICERS were the direct and proximate cause of the Constitutional violations set forth above.

75. WHEREFORE, PLAINTIFF demands compensatory damages from the DEFENDANT OFFICERS.  PLAINTIFF also demands punitive damages, costs and attorneys' fees against the DEFENDANT OFFICERS.  PLAINTIFF also demands whatever additional relief this Court deems equitable and just.

## COUNT II
## False Arrest –State Claim

76. PLAINTIFF re-alleges paragraphs 1 – 71 as though fully set forth herein.

77. The actions of the DEFENDANT OFFICERS, by participating in the arrest, generation of documents and/or failure to intervene in the arrest (with the ability to do so) caused the arrest of the PLAINTIFF without probable cause to believe that PLAINTIFF committed criminal activity.   The conduct of the DEFENDANT OFFICERS was in violation of the Constitution to the State of Illinois as well as Illinois law.

78. The aforementioned actions of the DEFENDANT OFFICERS were the direct and proximate cause of the violations set forth above.

79. WHEREFORE, PLAINTIFF demands compensatory damages from the DEFENDANT OFFICERS.  PLAINTIFF also demands punitive damages and costs against the DEFENDANT OFFICERS.  PLAINTIFF also demands whatever additional relief this Court deems equitable and just.

**COUNT III**
**Malicious Prosecution - State Claim**

80. PLAINTIFF re-alleges paragraphs 1 – 71 as though fully set forth herein.

81. The DEFENDANT OFFICERS alleged that PLAINTIFF violated the laws of the State of Illinois.  These allegations commenced or continued a criminal proceeding against PLAINTIFF.

82. The DEFENDANT OFFICERS engaged in this effort without probable cause.

83. The underlying criminal charges were ultimately resolved in favor of PLAINTIFF.

84. The underlying criminal charges were resolved in a manner indicative of innocence.

85. The aforementioned actions were the direct and proximate cause of the violations of Illinois State Law, as set forth above.

86. WHEREFORE, PLAINTIFF demands compensatory damages from the DEFENDANT OFFICERS.  PLAINTIFF also demands punitive damages and costs against the DEFENDANT OFFICERS.  PLAINTIFF also demands whatever additional relief this Court deems equitable and just.

**COUNT IV**
**§ 1983 Equal Protection – Class of One**

87. PLAINTIFF re-alleges paragraphs 1 – 71 as though fully set forth herein.

88. The actions of the DEFENDANT OFFICERS violated the Equal Protection clause to the United States Constitution.

89. The aforementioned actions of said DEFENDANT OFFICERS were the direct and proximate cause of the constitutional violations set forth above.

90. WHEREFORE, PLAINTIFF demands compensatory damages from the DEFENDANT OFFICERS.  PLAINTIFF also demands punitive damages, costs and attorneys' fees against the DEFENDANT OFFICERS.  PLAINTIFF also demands whatever additional relief this Court deems equitable and just.

## COUNT VI
## 745 ILCS 10/9-102 Claim Against the VILLAGE OF CRESTWOOD

91. PLAINTIFF re-alleges paragraphs 1 – 71 as though fully set forth herein.

92. Defendant VILLAGE OF CRESTWOOD is the employer of the DEFENDANT OFFICERS alleged above.

93. The DEFENDANT OFFICERS, as alleged above, committed the acts under color of law and in the scope of employment of the VILLAGE OF CRESTWOOD.

94. WHEREFORE, should the DEFENDANT OFFICERS be found liable for any of the alleged counts in this cause, PLAINTIFF demands that, pursuant to 745 ILCS 10/9-102, the VILLAGE OF CRESTWOOD pay PLAINTIFF any judgment obtained against the DEFENDANT OFFICERS as a result of this complaint.

## COUNT VII
## Supplementary Claim for *Respondeat Superior*

95. PLAINTIFF re-alleges paragraphs 1 – 71 as though fully set forth herein.

96. The aforesaid acts of the DEFENDANT OFFICERS were in the scope of employment and therefore the Defendant VILLAGE OF CRESTWOOD, as principal, is liable for the actions of its agent(s) under the doctrine of *respondeat superior*.

97. WHEREFORE should the DEFENDANT OFFICERS be found liable for any state claims

alleged herein, Plaintiff demands judgment against the VILLAGE OF CRESTWOOD

and such other additional relief, as this Court deems equitable and just.

## JURY DEMAND

98. Plaintiff demands trial by jury.

Respectfully submitted,

s/ Blake Horwitz
Attorney for the Plaintiff
Blake Horwitz

**HORWITZ, RICHARDSON & BAKER, LLC.**
Blake Horwitz, Esq.
20 S. Clark, #500
Chicago, IL  60603
(312) 676-2100